IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

WILLIAM D. BUMGARNER,

      Plaintiff,

v.                              CASE NO. 2:04-cv-00720

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.

PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

Plaintiff, William David Bumgarner (hereinafter referred to as "Claimant"), filed an application for DIB on November 26, 2002, alleging disability as of March 29, 2001, due to degenerative disc disease, diabetes and impingement syndrome of the left shoulder with a rotator cuff tear. (Tr. at 57-59, 101, 111.) The claim was

denied initially and upon reconsideration. (Tr. at 36-39, 41-43.)
On September 19, 2003, Claimant requested a hearing before an
Administrative Law Judge ("ALJ"). (Tr. at 44.) The hearing was
held on December 10, 2003, before the Honorable Theodore Burock.
(Tr. at 290-324.) By decision dated January 26, 2004, the ALJ
determined that Claimant was not entitled to benefits. (Tr. at 14-
21.) The ALJ's decision became the final decision of the
Commissioner on May 14, 2004, when the Appeals Council denied
Claimant's request for review. (Tr. at 5-9.) On July 14, 2004,
Claimant brought the present action seeking judicial review of the
administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the
burden of proving a disability. See Blalock v. Richardson, 483
F.2d 773, 774 (4th Cir. 1972). A disability is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable impairment which can be expected to
last for a continuous period of not less than 12 months . . . ."
42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential
evaluation" for the adjudication of disability claims. 20 C.F.R.
§ 404.1520 (2004). If an individual is found "not disabled" at any
step, further inquiry is unnecessary. Id. § 404.1520(a). The
first inquiry under the sequence is whether a claimant is currently
engaged in substantial gainful employment. Id. § 404.1520(b). If

2

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in

substantial gainful activity since the alleged onset date.  (Tr. at 15.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of diabetes mellitus, degenerative disc disease of the lumbar spine, headaches, left SI joint syndrome and status post repair of left rotator cuff tear.  (Tr. at 17.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 19.)  As a result, Claimant can return to his past relevant work as a security guard.  (Tr. at 19.)  On this basis, benefits were denied.  (Tr. at 20.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with

4

resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was forty-nine years old at the time of the administrative hearing.  (Tr. at 294.)  At the time of the administrative hearing, Claimant was enrolled in a full load of college classes, though he testified that he had "missed a lot this semester."  (Tr. at 296.)  In the past, he worked as a security guard.  (Tr. at 319.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

On May 28, 2002, James B. Cox, D.O. performed arthroscopy on Claimant's left shoulder with subacromial decompression and repair of his left rotator cuff following complaints of pain and weakness in the bilateral shoulders, worse on the left than the right.  (Tr. at 134.)

5

A CT scan of Claimant's lumbar spine on July 10, 2002, revealed a shallow central L5-S1 disc protrusion, left posterolateral osteophyte development, L5-S1 compromising the left neural foramen and facet joint degenerative changes at L3-4 and L4-5. (Tr. at 139.)

Chest x-rays on October 17, 2001, revealed mild pulmonary hyperinflation. The lungs appeared clear and free of infiltrates. There was no pleural effusion. (Tr. at 146.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on August 22, 2002, and opined that Claimant was limited to light work, reduced by an occasional ability to climb ladders, ropes and scaffolds and a limited ability to reach in all directions, including overhead. (Tr. at 154-61.)

The record includes treatment notes and other evidence from Dr. Cox dated April 29, 2002, through September 25, 2002. (Tr. at 163-75.) On June 5, 2002, following arthroscopic surgery, Dr. Cox noted that Claimant's progress was good. Dr. Cox advised Claimant that it would take weeks to months before he had functional use of his shoulder. Claimant had begun physical therapy. Claimant's incisions were well healed and there was no erythema or induration. Neurovascular tissue was intact. (Tr. at 170.) On July 3, 2002, Claimant had extreme weakness and active range of motion, as expected. Active extension was about 60 degrees. He had strong resisted external rotation. Neurovascular status was intact. He

had obvious atrophy around the left shoulder girdle compared to the right. Dr. Cox recommended that Claimant continue physical therapy. Claimant also reported chronic numbness and weakness in his left lower extremity with occasional buckling of his leg. Dr. Cox ordered a CT scan or an MRI. (Tr. at 168.) The results of the CT scan are noted above. On July 3, 2002, Dr. Cox opined that Claimant would be disabled for at least six months due to his shoulder impairment. (Tr. at 167.) On July 31, 2002, Claimant reported some improvement in his left shoulder. Claimant had active elevation in the scapular plane to about 80 degrees. He felt that Claimant was close to going over the plateau he was at now, as far as active elevation was concerned. Dr. Cox recommended that Claimant continue physical therapy. Regarding Claimant's back, Dr. Cox noted that an MRI showed foraminal stenosis at L5-S1 with neural compromise on the left side. Dr. Cox decided to refer Claimant to pain management. (Tr. at 166.)

On August 28, 2002, Dr. Cox noted that Claimant was "doing extremely well with his left shoulder now." (Tr. at 165.) On September 25, 2002, Dr. Cox noted that Claimant's shoulder was much better. Claimant had good muscle tone around the cuff, strong resisted external rotation and a negative drop arm test. Dr. Cox indicated he would see Claimant on an as needed basis for his shoulder complaints. (Tr. at 163.)

The record includes physical therapy treatment notes dated May

7

31, 2002, through October 7, 2002. (Tr. at 177-210.) At his last visit on October 7, 2002, Claimant reported being 85 to 90 percent better overall. (Tr. at 177.)

On March 25, 2003, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to light work, reduced by an occasional ability to climb, balance, crouch and crawl, a limited ability to reach in all directions, including overhead, and a need to avoid concentrated exposure to vibration. (Tr. at 212-19.)

On May 27, 2003, Claimant reported to the emergency room complaining that his blood sugar levels had been high for the last two weeks. Claimant had not taken his medication for several days and had recently switched from private insurance to a medical card. Claimant was diagnosed with hyperglycemia in a diabetic patient and prescribed Glucophage. (Tr. at 222.)

On June 6, 2003, Claimant followed up from his hospital visit with Billie Toler, D.O. Dr. Toler diagnosed diabetes mellitus. (Tr. at 231.)

On July 22, 2003, x-rays of Claimant's left hip and knee showed degenerative changes, but were otherwise normal. (Tr. at 237.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on August 25, 2003, and opined that Claimant was limited to light work, further reduced by an

occasional ability to climb, balance, stoop, kneel, crouch and crawl, a limited ability to reach in all directions, including overhead, and a need to avoid concentrated exposure to vibration and even moderate exposure to hazards.  (Tr. at 238-45.)

The record includes treatment notes and other evidence from Kuruvilla John, M.D. dated October 21, 1991, through September 9, 1994.  (Tr. at 247-58.)  On May 7, 1992, Dr. John, who treated Claimant for complaints of headaches, noted that a CT scan of Claimant's brain was normal and that Orudis helped his condition. Claimant reported two headaches per month, which he was able to ward off by taking the medication.  (Tr. at 247.)  On May 19, 1994, Dr. John noted that Claimant had fewer headaches in the summer and more in the winter.  In September of 1994, Claimant underwent an EMG and nerve conduction studies after complaining of numbness in the left arm following an extended period of time playing computer games.  There was evidence of ulnar nerve entrapment at the elbow. There were mild denervation changes in the ulnar innervated muscles.  (Tr. at 254.)

The record includes treatment notes from the Regional Pain Management Center dated February 10, 2003, through August 13, 2003. (Tr. at 259-66.)  On February 10, 2003, Ahmet Ozturk, M.D. noted that Claimant could walk on his heels and toes.  There was no obvious muscle weakness or wasting, and muscle strength was 5/5 on a global basis.  Deep tendon reflexes were 3 plus and symmetrical

9

at the knees, 2 plus and symmetrical at the ankles.  Straight leg raising was negative on the right and positive at 65 degrees on the left.  Dr. Ozturk diagnosed multi-level lumbar radiculopathy, left L5, S1, facet joint syndrome, bilateral lower levels, left greater than the right and myofascial pain syndrome.  X-rays of Claimant's lumbar spine on February 10, 2003, showed moderate multilevel degenerative disc disease.  (Tr. at 265.)  On July 25, 2003, Dr. Ozturk noted that Claimant could walk on his heels and toes without difficulty or pain.  There was no obvious muscle weakness or wasting and muscle strength was 5/5 on a global basis. Deep tendon reflexes were 3 plus and symmetrical at the knees, 2 plus and symmetrical at the ankles.  Straight leg raising was negative on the right and positive on the left at 65 degrees.  Dr. Ozturk made the same diagnoses as above, and diagnosed SI joint syndrome.  Dr. Ozturk ordered an MRI.  (Tr. at 264.)  An MRI of the lumbar spine on August 13, 2003, showed no acute disc extrusion or spinal stenosis, but there was mild bulging at L3-4.  (Tr. at 266.)

The record includes treatment notes from Kanawha Family Practice Center dated June 6, 2003, through November 7, 2003.  The treatment notes indicate that Claimant's blood sugar was initially poorly controlled, but that this improved over time.  Also, Claimant complained of chronic back pain.  (Tr. at 263-73.)

By letter dated October 31, 2003, Dr. Ozturk wrote to Claimant's counsel that he was unable to complete a Medical

Assessment of Ability to do Work-Related Activities form, as
Plaintiff's counsel apparently had requested. He explained that in
his physical examination, he does not "address issues such as
climbing, balancing, stooping, crouching, kneeling and crawling,
and I do not have any medical findings regarding these issues. I
recommend that you obtain a functional capacity evaluation for your
client for a reliable report." (Tr. at 284.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not
supported by substantial evidence because (1) the ALJ erred in
failing to develop the record by obtaining a consultative medical
examination, a consultative psychiatric examination or a functional
capacity evaluation; (2) the ALJ failed to properly analyze
Claimant's complaints of pain and erred in rejecting his
credibility; and (3) the ALJ erred in finding Claimant could return
to his previous work as a security guard. (Pl.'s Br. at 4-6.)

The Commissioner argues that (1) substantial evidence supports
the Commissioner's decision that Claimant could perform his past
relevant work; (2) the ALJ properly assessed Claimant's residual
functional capacity; (3) the ALJ properly assessed and developed
the medical evidence of record; (4) the ALJ properly assessed
Claimant's subjective complaints; and (5) the ALJ properly relied
on the testimony of the vocational expert. (Def.'s Br. at 7-13.)

Claimant first argues that the ALJ erred in his duty to

11

develop the record.  Claimant asserts that the ALJ should have
obtained a functional capacity evaluation, as recommended by
Claimant's treating physician, Dr. Ozturk.  Claimant further
asserts that the ALJ should have obtained a consultative medical
examination.  (Pl.'s Br. at 4-5.)  Finally, Claimant asserts that
after he alleged depression at the administrative hearing, the ALJ
should have obtained a psychiatric evaluation of Claimant.  (Pl.'s
Br. at 5.)

     In Cook v. Heckler, the Fourth Circuit noted that an ALJ has
a "responsibility to help develop the evidence."  Cook v. Heckler,
783 F.2d 1168, 1173 (4th Cir. 1986).  The court stated that "[t]his
circuit has held that the ALJ has a duty to explore all relevant
facts and inquire into the issues necessary for adequate
development of the record, and cannot rely on evidence submitted by
the claimant when that evidence is inadequate."  Id.  The court
explained that the ALJ's failure to ask further questions and to
demand the production of further evidence about the claimant's
arthritis claim, in order to determine if it met the requirements
in the listings of impairments, amounted to a neglect of his duty
to develop the evidence.  Id.

     Consistent therewith, the regulations at 20 C.F.R. § 404.1517
(2004) provide that

               [i]f your medical sources cannot or will not
               give us sufficient medical evidence about your
               impairment for us to determine whether you are
               disabled or blind, we may ask you to have one

                              12

or more physical or mental examinations or
tests.

Nevertheless, it is Claimant's responsibility to prove to the

Commissioner that he or she is disabled.  20 C.F.R. § 404.1512(a)

(2004).   Thus, Claimant is responsible for providing medical

evidence to the Commissioner showing that he or she has an

impairment.  Id. § 404.1512(c).  In Bowen v. Yuckert, the Supreme

Court noted:

> The severity regulation does not change the
> settled allocation of burdens of proof in
> disability proceedings. It is true . . . that
> the Secretary bears the burden of proof at
> step five . . . [b]ut the Secretary is
> required to bear this burden only if the
> sequential evaluation process proceeds to the
> fifth step. The claimant first must bear the
> burden . . . of showing that . . . he has a
> medically severe impairment or combination of
> impairments . . . . If the process ends at
> step two, the burden of proof never shifts to
> the Secretary. . . . It is not unreasonable
> to require the claimant, who is in a better
> position to provide information about his own
> medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the

record, he is not required to act as plaintiff's counsel.  Clark v.

Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).  Claimant bears the

burden of establishing a prima facie entitlement to benefits.  See

Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A.

§ 423(d)(5)(A) ("An individual shall not be considered to be under

a disability unless he furnishes such medical and other evidence of

13

the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

The court proposes that the presiding District Judge find that the ALJ did not err in his duty to develop the record. The court can find no indication that the record was inadequate or incomplete, either as to Claimant's physical or alleged mental impairments. Other than asserting that the ALJ should have ordered the functional capacity evaluation suggested by Dr. Ozturk, Claimant does not indicate why the record was inadequate and in need of further development. Notably, Dr. Ozturk only suggested a functional capacity evaluation to determine Claimant's ability to climb, balance, stoop, crouch, kneel and crawl, because he did "not have any medical findings regarding these issues." (Tr. at 284.) This statement is not an indication that the record is inadequate, only that Dr. Ozturk could not render an opinion about such limitations. Moreover, there is other evidence of record, particularly the opinions of the State agency medical sources on Physical Residual Functional Capacity Assessments, which provide adequate information about Claimant's abilities in this regard.

As to Claimant's alleged mental impairment, the ALJ explained in his decision that "[a]lthough the claimant alleges feelings of depression, there is no indication in the medical record that the claimant reported such symptoms to his treating physician or that

14

there are sufficient clinical findings to support a related diagnosis. Therefore, the claimant's feelings of depression are not a medically determinable impairment." (Tr. at 16.)

The regulations require the showing of a medically determinable impairment before a mental impairment can be determined severe at step two of the sequential analysis. 20 C.F.R. § 404.1520a(b)(1). Claimant first mentioned depression at the administrative hearing (Tr. at 304-06), and there is no medical evidence of record reflecting a diagnosis or treatment of a mental impairment, much less a statement from Claimant to his providers alluding to such symptoms. Indeed, Claimant testified at the administrative hearing that he did not think about having such symptoms until his attorney asked him about it. (Tr. 304.) The absence of medical evidence related to Claimant's mental condition did not obligate the ALJ to obtain a consultative mental examination, even in the face of Claimant's testimony at the administrative hearing. This is not a case of inadequate evidence as to a particular impairment. Instead, the absence of evidence related to Claimant's mental condition suggests that Claimant did not suffer a medically determinable mental impairment. Besides, despite finding this condition to be nonsevere, the ALJ adequately considered Claimant's subjective complaints related to depression in his pain and credibility analysis.

Based on the above, the court proposes that the presiding

15

District Judge find that the ALJ did not err in his duty to develop the record.

Claimant next asserts that the ALJ erred in his pain and credibility analysis because he did not properly analyze certain of the pain factors identified in 20 C.F.R. § 404.1529(c)(3) (2004). Claimant asserts that the ALJ did not discuss factors one, four, five, six or seven, and the court assumes Claimant is referring to Claimant's daily activities, the type, dosage, effectiveness and side effects of Claimant's medications, treatment other than medication, any measures other than treatment and any other factors. See 20 C.F.R. § 404.1529(c)(3)(i), (iv), (v), (vi) and (vii). Claimant asserts that the ALJ failed to address Claimant's access to medical care or attention and did not discuss Claimant's migraine headaches and their effect on his residual functional capacity. (Pl.'s Br. at 5.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2004); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). Contrary to Claimant's assertions, the ALJ acknowledged Claimant's daily activities, including that Claimant has difficulty cleaning, cooking and shopping. (Tr. at 16.) While the ALJ did not mention Claimant's

16

medication and side effects in his decision, he did question Claimant about this at the administrative hearing. Claimant testified that he took Ketoprofen, Orudis, Naproxen and Ibuprofen and that the Ketoprofen "doesn't get completely rid of the pain, but it makes it to where it's bearable." (Tr. at 302.) Claimant also testified that he uses a hearing pad and takes hot baths. (Tr. at 302-03.) The ALJ could have been more thorough in his discussion of these factors in his decision, but, his pain and credibility analysis is supported by substantial evidence.

Claimant asserts that the ALJ did not address Claimant's access to medical care or medication. Claimant does not elaborate on this argument. There is at least one notation in the record indicating that Claimant lost his private insurance, but that he had a medical card. (Tr. at 222.) Furthermore, Claimant did not testify at the administrative hearing about any difficulty in obtaining medical treatment.

Finally, Claimant is incorrect in his assertion that the ALJ failed to address his migraine headaches. The ALJ found Claimant's headaches to be a severe impairment. (Tr. at 17.) He considered Claimant's subjective complaints in this regard in his pain and credibility analysis (Tr. at 16), and his residual functional capacity finding limiting Claimant to light work, further reduced by nonexertional limitations, adequately contemplates any limitations related thereto. (Tr. at 19.) Notably, the most

17

recent medical evidence of record related to Claimant's headaches,

from Dr. John and dated in 1993 and 1994, indicates that Claimant's

headaches are under good control with Orudis.   (Tr. at 252-53.)

Thus, the court proposes that the presiding District Judge find

that substantial evidence supports the ALJ's pain and credibility

analysis.

Finally, Claimant argues that the ALJ erred in finding that

the vocational expert testified that Claimant could perform his

past work as a security guard.   Claimant asserts that this is

incorrect and that instead "[t]he vocational expert was not asked

to give his opinion as to the employability of this particular

claimant and he did not.   This error is particularly prejudicial

since the claimant was unable to perform his last security job,

even though it was at the sedentary level."   (Pl.'s Br. at 6.)

At the administrative hearing, the vocational expert testified

that the job of security guard as performed in the national economy

is a light level exertional job, but that Claimant actually

performed the job at the sedentary level of exertion.   (Tr. at 319-

20.) The ALJ then posed the following hypothetical question:

> Q Okay.  First hypothetical.  Assume an individual the
> Claimant's age, education, work experience who has
> residual functional capacity for light work non-
> exertionally; no climbing ropes, ladders, scaffolds;
> occasional balance, stoop, kneel, crouch, crawl; no
> concentrated exposure to vibration and no hazards such as
> unprotected heights or dangerous equipment.  Can the
> individual engage in past-relevant work?
> A  Yes, sir.
> Q  Okay.  Whether it was done as light or –

18

A   Or as sedentary.

(Tr. at 319.)

SSR 82-62, 1982 WL 31386, *4 (1982), requires the following specific findings of fact when the Commissioner determines that a claimant can return to his or her past relevant work:

> 1.   A finding of fact as to the individual's RFC [residual functional capacity].
> 2.   A finding of fact as to the physical and mental demands of the past job/occupation.
> 3.   A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Recently amended regulations now permit the use of a vocational expert, vocational specialist or other vocational resources at step four of the sequential evaluation process in determining whether a claimant can return to past relevant work. 20 C.F.R. § 404.1560(b)(2) (2004).

The ALJ complied with SSR 82-62. He made specific findings about Claimant's residual functional capacity and the demands of Claimant's past job as a security guard and ultimately determined that Claimant's residual functional capacity would permit a return to his past relevant work.   (Tr. at 19.)   Despite Claimant's arguments to the contrary, the ALJ's findings are supported by the testimony of the vocational expert cited above.   Thus, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's determination that Claimant could return to his past relevant work, both as it is performed in the national economy (at the light level of exertion) and as performed

19

by Claimant (as the sedentary level of exertion).

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Summary Judgment, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.

20

1984).   Copies of such objections shall be served on opposing parties, Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.


_____May 4, 2005_____
            Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge


21